FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 23 2018 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DANIELLE DAVIDSON, SUSAN CHODKOWSKI,
GARY VOLPE, MATTHEW SARTER,
WENDY NEAL, DEBORAH PEDENZIN,
ROSANNA LAURO, and all others similarly situated

Plaintiffs,                    **VERIFIED COMPLAINT**

-against-                               Jury Trial Demanded
                                        On All Issues

COUNTY OF NASSAU                **CV 18-1182**
                                Index No.:

                                **SPATT, J.**

Defendant.
------------------------------------------------------------------------X  **BROWN, M. J.**

Plaintiffs, by their attorneys, the Law Offices of Louis D. Stober, Jr., LLC, alleges as

follows:

## PURPOSE OF ACTION

1.  The Plaintiffs bring this action as a class action lawsuit individually and on behalf of

    other similarly situated individuals who have, and who are currently employed by the

    Defendant, the County of Nassau ("County"), a number of whom were class members of

    prior Federal litigation before this Court entitled Ebbert v. Nassau County, 05-cv-

    5445(JFB)(AKT), 2009 WL 935812 (E.D.N.Y. Mar. 31, 2009) and/or Volpe v. Nassau

    County, 915 F. Supp. 2d 284 (E.D.N.Y. 2013) (hereinafter referred to as the "Ebbert and

    Volpe cases" respectively).

2.  The Plaintiffs allege that the County has failed to comply with the provisions of the New

    York State and Federal Equal Pay Acts ("EPA"), New York Labor Law ("NYLL") § 194

*et seq.* and 29 U.S.C. § 206(d) respectively, by paying the predominantly female Police Communication Operators ("PCOs") and Police Communication Operator Supervisors ("PCOSs") substantially less compensation than it did the predominantly male Fire Communication Technicians ("FCTs") and Fire Communication Technician Supervisors ("FCTSs"), despite the fact that the PCOs and PCOSs and FCTs and FCTSs are employed within the same facility and perform virtually identical duties for the County.

3. The Plaintiffs bring this action on their own behalves and on behalf of all similarly situated PCOs and PCOSs who were and continue to be required to work an extra twelve-hour "Supplemental Day" without pay in addition to their regular work schedule while the individuals employed as FCTs and FCTSs do not, thus causing the predominantly female PCOs and PCOSs from receiving the same rate of pay as the predominantly male FCTs and FCTSs for performing the same work. The members of this proposed collective and class action, including the Plaintiffs, will herein after be reference as "putative collective and class members."

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over this action as a Federal Question pursuant to 29 U.S.C. § 206(d) and 28 U.S.C. §§ 1331. This Court has supplemental jurisdiction over the Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367, as the Plaintiffs state and federal claims derive from a common nucleus of operative facts.

5. Venue lies in this District pursuant to 28 U.S.C. § 1391, in that all of the causes of action raised within this litigation arose within the Eastern District of New York, Nassau County, New York.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

7. Plaintiff, Danielle Davidson, is a resident of Nassau County and has been employed as a Police Communications Operator ("PCO"), since December 2, 2003.

8. Plaintiff, Susan Chodkowski, is a resident of Nassau County and was employed as a PCO from April 12, 1996 until January 2004. Plaintiff Chodkowski was then promoted, and has served as a PCOS since January 22, 2004.

9. Plaintiff, Gary Volpe, is a resident of Wayne County, Pennsylvania and has been employed as a PCO since November 6, 1998.

10. Plaintiff, Matthew Sarter, is a resident of Nassau County and has been employed as a PCO since March 8, 1999.

11. Plaintiff, Wendy Neal, is a resident of Nassau County and has been employed as a PCO since November 20, 1991.

12. Plaintiff, Deborah Pedenzin, is a resident of Nassau County and has been employed as a PCO since September 4, 2007.

13. Plaintiff, Rosanna Lauro, is a resident of Nassau County and has been employed as a PCO since February 23, 2001.

14. Defendant, County of Nassau, is a municipal corporation duly incorporated under the laws of the State of New York.

## COLLECTIVE ACTION

15. With respect to their claims under the Federal EPA, the female Plaintiffs bring this action pursuant to 29 U.S.C. § 206(d) *et seq.*, on behalf of themselves and all other

similarly situated female PCOs and PCOSs. The putative members of this collective action include all other similarly situated female PCOs and PCOSs who have been employed by the County at any time within three years prior to the commencement of this action.

16. With respect to their claims under the Federal EPA, the male Plaintiffs also bring this action pursuant to 29 U.S.C. § 206(d) *et seq.*, on behalf of themselves and all other similarly situated male PCOs and PCOSs. Undoubtedly, if the female Plaintiffs are successful in this lawsuit against the County, included as a remedy will be substantial back pay for the period in which the County was in violation of the Federal EPA along with the equalization of female PCOs' and PCOs' salaries with their predominantly male counterparts in Fire Communications ("FCOM"). In the interests of efficiency and economy for all of the parties involved, the male PCOs and PCOSs should be enabled by this Court to join in a collective and class action with their female colleagues, as any remedy received by the female PCOs and PCOSS would then trigger a violation of the Federal EPA with respect to the male PCOs and PCOSs, thus forcing the male PCOs and PCOSs to commence a subsequent legal action as they did in <u>Volpe</u>. The putative members of this collective action include all other male PCOs and PCOSs who have been employed by the County at any time within three years prior to the commencement of this action.

## CLASS ACTION

17. The Plaintiffs also seek to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(b)(3) with respect to their claims under the New York State EPA, on behalf of

themselves individually and all other similarly situated PCOs and PCOSs who have been employed by the County at any time during the relevant statute of limitation period.

18. Fed. R. Civ. P. 23(a) provides that a cause of action may be maintained as a class action if the following elements are met:

   (1) The class is so numerous that joinder of all members is impracticable;

   (2) there are questions of law or fact common to the class;

   (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

   (4) the representative parties will fairly and adequately protect the interests of the class.

19. Additionally, Fed. R. Civ. P. 23(b)(3) provides that in addition to satisfying the requirements stated in subsection (a), it must be also be shown that a class action is superior to other available methods for the fair and efficient adjudication of the case or controversy.

## Class Definitions

20. Plaintiffs seek certification of a class consisting of the following individuals:

   All persons who been employed as PCOs and PCOSs and all PCO titles for the Defendants at any time from six years prior to the filing of this Action to the entry of judgment in this Action (hereinafter the "New York Class").

## Numerosity

21. The Plaintiffs satisfy the numerosity requirement as the proposed class is so numerous that the joinder of all members would be both impracticable and inefficient.

22. The proposed class can be identified and located using the County's payroll and personnel records, and the putative class members may be informed of the pendency of this action by direct mail and/or published or broadcast notice.

## Common Questions of Law and Fact

23. The present action involves questions of fact and law which are common to each of the putative class members and which predominate over any questions affecting only individual members. The questions of fact and of law common to each putative class member arising from the County's violations include, but are not limited to the following questions:

(1) Whether the County has violated the provisions of the New York State and Federal EPAs with respect to the female Plaintiffs and putative class members by requiring the predominantly female PCOs and PCOSs to work an extra, uncompensated for "Supplemental Day," while the predominantly male FCTs and FCTSs are not required to work any Supplemental Days, thereby causing the female PCOs and PCOSs to be compensated less for substantially the same work as the predominantly male FTCs and FTCSs; and

(2) Whether the County would violate the provisions of the New York State and Federal EPAs with respect to the male Plaintiffs and putative class members by making the female PCOs and PCOSs whole for the violations of the New York State and Federal EPAs described above, thus causing the male PCOs and PCOSs to receive less compensation within the statute of limitations recovery period for performing substantially the same work as the female PCOs and PCOSs.

24. The questions set forth above predominate over any tertiary questions limited only to individual Plaintiffs or individual putative class members. Based upon considerations of consistency, judicial economy, efficiency, fairness, and equity, a class action is superior to any other available method for the fair and efficient adjudication of this controversy.

**Typicality**

25. The Plaintiffs' claims under the New York State and Federal EPAs are typical and virtually identical to the claims of the other putative class members. As a result of the County's unlawful conduct, the Plaintiffs have suffered virtually identical injuries as those suffered by other members of the putative class they seek to represent.

**Adequacy**

26. Plaintiffs are adequate representatives of the class which they seek to represent, as they are members of the putative class and their interests do not conflict with the interests of the members of the class they seek to represent. As a result, the interests of the putative class members will be fairly and adequately protected by the Plaintiffs and their undersigned counsel. The Plaintiffs have hired competent attorneys who are experienced in class action litigation and committed to the prosecution of this Action as evidenced by their representation of these Plaintiffs and other County employees within several putative class action cases currently pending within this District, and their successful representation of a number of the male Plaintiffs and putative class members within the Volpe case.

**Superiority**

27. A class action is superior to any other available means for the fair and efficient adjudication of this controversy because the individual joinder of the parties is impracticable and inefficient. Certification of this action as a class action will allow all of the PCOs and PCOSs to prosecute their virtually identical claims for relief within a single forum, simultaneously, and efficiently ensuring the most expedient conclusion possible of the litigation between the parties, without the unnecessary duplication of effort and

expense that would occur if these claims were brought individually by each of the putative class members.

28. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests due to the inherent costs of bringing litigation compared with the potential recovery.

## STATEMENT OF FACTS

29. All of the Plaintiffs are employed or were employed by the County within the County's police department. As PCOs and PCOSs for the for the County, their duties included receiving telephone calls placed on the County's 911 emergency system, deciding the appropriate response to each of the calls, and if necessary, dispatching the appropriate aid depending upon the gravity of the emergency situation.

30. There are presently approximately 200 PCOs and PCOSs employed by the County, over 90% of whom, are female.

31. The 1994 MOU 12-Hour Tour Agreement ("1994 MOU"), reached on January 26, 1994, and still effective presently, sets out the schedule by which the PCOs and PCOSs work.

32. The schedule set out by the 1994 MOU consists of seven week tour cycles.

33. During weeks one through six of a given tour cycle, the PCOs and PCOSs work a total of three, twelve hour shifts, for a total of 36 hours per week. However, every seventh week, the PCOs and PCOSs are required to work four twelve hour shifts for a total of 48 hours per week.

34. The extra day that the PCOs and PCOSs are required to work every seventh week is called a "Supplemental Day."

35. Throughout the course of their employment, from the execution of the 1994 MOU to the present, the Plaintiffs regularly and continuously worked 48-hour work weeks every seventh week, resulting in the working of approximately seven to eight Supplemental Days every year.

36. Throughout the course of their employment, from the execution of the 1994 MOU to the present, the Plaintiffs were never paid overtime compensation when they worked over 40 hours every seventh week as a result of the mandatory working of a Supplemental Day.

37. Throughout the course of their employment, from the execution of the 1994 MOU to the present, the Plaintiffs were neither compensated at straight time for the hours they worked during the County's mandated Supplemental Days, or overtime when the mandated working of the Supplemental Days caused the PCOs and PCOSs to work more than 40 hours in a given week.

38. The County was and continues to be aware of the fact that the Plaintiffs are paid neither straight time nor overtime as a result of the extra hours they are forced to work due to the mandated working of Supplemental Days, as the terms of the 1994 MOU agreement were brought to the attention of the County in a meeting between the County and the Plaintiffs' Union, the Civil Service Employees Association ("CSEA"), in regards to a grievance unrelated to the issues in this Action.

39. FCOM is an agency within the County to which the FTCs and FCTSs are assigned and employed.

40. The FTCs and FCTSs are located within the same facility as the PCOs and PCOSs, and perform virtually identical duties as the PCOs and PCOSs.

41. The overwhelming majority of the FCTs and FCTSs are male.

42. The FCTs and FCTSs are required to work a schedule that consists of three, twelve hours days per week for a total of 36 hours per week, constituting the same work schedule as the PCOs and PCOSs during weeks one through six of their tour cycle.

43. In contrast to the PCOs and PCOSs, the FCTs and FCTSs are not required to work the Supplemental Days by the County.

44. Because the FCTs and FCTSs are not subject to working Supplemental Days, they are essentially being compensated at a higher rate than the PCOs and PCOSs, all of whom are required to work Supplemental Days with no compensation. This results in the predominantly female PCOs, and PCOSs being compensated at a lower rate for virtually identical work than the predominantly male FCTs and FCTSs.

45. Furthermore, because the PCOs and PCOSs are required to work a Supplemental Day every seventh week at no additional compensation, they are deprived of the opportunity to work overtime on that date, whereas the FCOM employees are freely able to work an overtime shift, thereby providing the predominantly male employees of FCOM at least seven to eight more opportunities to work overtime in a given year as opposed to the predominantly female PCOs and PCOSs.

46. In early 2016, the County and the CSEA entered into a Training MOU, which mandates that the PCOs and PCOSs "exchange" one of their Supplemental Days for a mandatory "Training Day."

47. When the Plaintiffs "exchange" a Supplemental Day for a Training Day, they are required to work an additional twelve hours in the form of training, but receive neither straight time nor overtime for these hours worked.

48. In contrast, the predominantly male FCTs and FCTSs are not required to complete training on an "exchange" basis, and thus receive straight time or overtime compensation when completing employer mandated training.

49. On March 22, 2017, the Plaintiffs filed a Notice of Claim upon the County, pursuant to County Law § 52, alleging that the conduct complained of herein, constituted violations of the Ebbert and Volpe settlement orders, the provisions of the New York State and Federal EPAs, and the provisions of the overtime provisions of the Fair Labor Standards Act ("FLSA") and NYLL respectively. (A copy of the March 22, 2017 Notice of Claim is annexed hereto as "Exhibit A").

50. More than thirty days have elapsed since the Plaintiffs have filed their Notice of Claim upon the County, yet, to date, the County has still offered no remedy or redress to the Plaintiffs or any putative collective or class member for any of the violations of law identified within the Plaintiffs' Notice of Claim, including the violations of the New York State and Federal EPAs that are at issue within this Action.

51. The filing of this Action is not the first attempt by the Plaintiffs to seek redress for the County's persistent and continuous violations of the State and Federal EPAs, but instead serves as another chapter in the voluminous history of litigation between the parties, which has now persisted for over a decade.

52. The first salvo of litigation against the County with respect to alleged violations of the New York State and Federal Equal Pay Acts commenced in the year 2005, when Helen

Ebbert, along with several other female PCOs and PCOSs commenced a lawsuit in this District Court entitled Ebbert v. Nassau County, 05-cv-5445(JFB)(AKT), 2009 WL 935812 (E.D.N.Y. Mar. 31, 2009), seeking an equalization of their pay to the FCTs and FCTSs for all female PCOs and PCOSs retroactive to November 18, 1999 as a result of disparities in the pay steps and pay grades between similarly situated PCOs and PCOSs and FCTs and FCTSs in the relevant time period, which caused the predominantly female PCOs and PCOSs to receive less compensation than their male counterparts in FCOM.

53.  The parties in the Ebbert case settled their claims, resulting in the promulgation of the Ebbert order, which mandated that the County use best efforts to maintain equality between the predominantly female PCOs and PCOSs and the predominantly male FCTs and FCTSs, including that the predominantly female PCOs and PCOSs receive equal pay than their male counterparts in FCOM.

54. However, as a result of the Ebbert order, which awarded damages to the female PCOs and PCOSs for the County's violations of the New York State and Federal EPAs, the net effect of the ruling resulted in the male PCOs and PCOSs being paid less than their female counterparts for performing equal work, thus constituting another violation of the New York State and Federal EPAs.

55. As a result, the male PCOs and PCOSs were forced to bring their own lawsuit under the New York State and Federal EPAs to obtain parity with their female counterparts. See, Volpe v. Nassau Cty., 915 F. Supp. 2d 284, 287 (E.D.N.Y. 2013).

56. Once again, as in the Ebbert case, the Volpe case's settlement resulted in the promulgation of an order which both awarded damages to the male PCOs and PCOSs for

the County's violations of the New York State and Federal EPAs, as well as imposed a requirement that parity be maintained between the male and female PCOs and PCOSs.

57. Despite the success of the plaintiffs in both the Ebbert and Volpe cases, the County has continued to violate the provisions of the New York State and Federal EPAs by compensating the female PCOs and PCOSs less than their predominantly male counterparts in FCOM, this time by mandating that the predominantly female PCOs and PCOSs work an extra Supplemental Day while the predominantly male FCTs and FCTSs are not.

58. At a meeting on August 8, 2016 between the CSEA and the County in regards to a grievance unrelated to the present action, as the CSEA's no-cost solution to remedying the grievance, Plaintiff Volpe suggested that the County discontinue its practice of mandating that the PCOs and PCOSs work Supplemental Days, arguing that the County's mandate violated the terms of the Ebbert order since the net result was that the female PCOs and PCOSs were being paid at a lower rate than their predominantly male counterparts in FCOM for virtually identical work and the FLSA, since the PCOs and PCOSs were not being paid overtime compensation for the hours worked in excess of 40 as a result of the Supplemental Day.

59. At the meeting, then Police Commissioner, Thomas Krumpter, refused to eliminate Supplemental Days despite Plaintiff Volpe's arguments.

60. At an arbitration hearing related to the grievance a few days later, counsel for the CSEA again argued that the mandated working of Supplemental Days violated the provisions of the Ebbert order and the FLSA. Despite these arguments, the County again refused to eliminate the mandated working of Supplemental Days.

61. In response to the County's continued refusal to abide by the terms of the <u>Ebbert</u> order, the New York State and Federal EPAs, and the overtime provisions of the FLSA and NYLL, the Plaintiffs filed a Federal lawsuit within this District Court on October 17, 2016, entitled <u>Chodkowski et al. v. County of Nassau</u>, 16-cv-5770 (SJF)(GRB), alleging claims for breaches of the <u>Ebbert</u> and <u>Volpe</u> settlement orders, the New York State and Federal EPAs, and the overtime provisions of the FLSA and NYLL. (A copy of the Plaintiff's October 17, 2016 complaint is annexed hereto as "Exhibit B").

62. While the initial complaint in the October 17, 2016 action contained both the parity claims under the settlement agreements and EPAs, as well as the claims for unpaid overtime compensation, during a proceeding held on April 3, 2017 in regards to the Plaintiff's motion to amend their complaint in that action, in the interests of judicial economy and in order to streamline the issues in the case, the Plaintiffs agreed to voluntary withdraw their parity claims and re-file them in state court, leaving only the overtime claims to be decided therein.

63. During the April 3, 2017 proceeding, the Plaintiffs agreed to withdraw their parity claims and re-file them in state court, with the understanding that the Plaintiffs would be entitled to obtain the full measure of relief within state court.

64. On May 5, 2017, the Plaintiffs filed a lawsuit within the Supreme Court of the State of New York, County of Nassau, alleging violations of the <u>Ebbert</u> and <u>Volpe</u> settlement orders, as well as violations of the New York State and Federal EPAs. (A copy of the Plaintiffs' May 5, 2017 complaint is annexed hereto as "Exhibit C").

65. On September 13, 2017, the Plaintiffs moved to certify their state court action as a class action, pursuant to the provisions of the New York Civil Practice Law and Rules ("CPLR") § 901.

66. However, in a decision dated December 11, 2017, Justice James P. McCormack dismissed the Plaintiffs motion for class certification without prejudice, granting the Plaintiffs leave to re-file the motion if the Plaintiffs waived any claims for liquidated damages under the New York State and Federal EPAs, since CPLR § 901 does not allow for the class certification of an action maintaining claims for statutory liquidated or punitive damages.

67. As a result of Justice McCormack's decision, the Plaintiffs were seemingly faced with an impossible choice, as the only way to maintain a class action for their claims under the New York State and Federal EPAs in state court would have forced the Plaintiffs and all other similarly situated PCOs and PCOSs to potentially surrender more than half of their potential recovery under the New York State and Federal EPAs, despite the fact the Plaintiffs' claims under the New York State and Federal EPAs are separate and distinct from their claims alleging a breach of the Ebbert and Volpe order and remain cognizable within the Federal courts.

68. Thus, on January 12, 2018, the Plaintiffs filed a motion within state court to both amend their complaint and renew their motion for class certification. Within the motion, the Plaintiffs asked that their claims involving the breaches of the Ebbert and Volpe settlement orders be certified, but that their distinct claims under the New York State and Federal EPAs be tabled pending the result this Federal Action.

## COUNT I

### VIOLATION OF THE EQUAL PAY ACT

69. The Plaintiffs repeat and re-allege each and every allegations contained within paragraphs 1 through 69 as stated above.

70. At all times relevant herein, the County has knowingly paid the female Plaintiffs and all similarly situated female PCOs and PCOSs at a lower rate than it paid the predominantly male FTCs and FTCSs for equal work, in violation of the Federal EPA (29 U.S.C. § 206(d)(1)).

71. As stated above, the County's failure to pay the female Plaintiffs and all similarly situated female PCOs and PCOSs at the same rate it paid the predominantly male FTCs and FTCSs for equal work was willful within the meaning of the Federal EPA.

72. As a result of the County's knowing and willful violations of the Federal EPA and the regulations promulgated therein, the female Plaintiffs and all similarly situated female PCOs and PCOSs have incurred damages in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pre and post-judgment interest and any other relief as this Court deems just and proper.

73. As in the Volpe case, the effect of remedying the violations of the Federal EPA as between the female Plaintiffs and all similarly situated female PCOs and PCOSs and their predominantly male counterparts in FCOM, will result in the male Plaintiffs and all similarly situated male PCOs and PCOSs being compensated at a rate less than that of their female co-workers for equal work, resulting in a violation of the Federal EPA as between the male Plaintiffs and all similarly male PCOs and PCOSs and the female Plaintiffs and all similarly situated female PCOs and PCOSs.

74. Therefore, in the interests of efficiency and economy, the male Plaintiffs and all similarly situated male PCOs and PCOSs should be entitled to join this litigation, and should be awarded damages in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pre and post-judgment interest, and any other relief as this Court deems just and proper, in the event their female counterparts are successful.

**COUNT II**

**VIOLATION OF THE NEW YORK STATE EQUAL PAY ACT**

75. The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 75 as described above.

76. The continued acts, practices, and policies as described above, by which the County has knowingly paid the female Plaintiffs and all similarly situated female PCOs and PCOSs less than it paid their predominantly male counterparts in FCOM for equal work constitutes ongoing discrimination against the female Plaintiffs and the putative female class members in violation of the New York State EPA, NYLL § 194 *et seq.*

77. The County's failure to pay the female Plaintiffs and all similarly situated female PCOs and PCOSs at the same rate it paid their predominantly male counterparts in FCOM for equal work was willful within the meaning of the New York State Equal Pay Act.

78. As stated above within paragraph 75 of this Complaint, the effect of remedying the violations of the New York State EPA as between the female Plaintiffs and all similarly situated female PCOs and PCOSs and their predominantly male counterparts in FCOM, will result in the male Plaintiffs and all similarly situated male PCOs and PCOSs being compensated at a rate less than that of their female co-workers for equal work, resulting in a violation of the New York State EPA as between the male Plaintiffs and all similarly

male PCOs and PCOSs and the female Plaintiffs and all similarly situated female PCOs and PCOSs.

79. Therefore, in the interests of efficiency and economy, the male Plaintiffs and all similarly situated male PCOs and PCOSs should be entitled to join this litigation, and all of the Plaintiffs and putative class members should be awarded damages in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pre and post-judgment interest, and any other relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiffs respectfully requests that this Court issues an order or orders:

a.) Designating this Action as a collective and class action;

b.) exercising supplemental jurisdiction over the Plaintiffs' and putative class members' claims under the New York State EPA;

c.) declaring that the Defendants discriminated against the Plaintiffs and the putative collective and class members pursuant to the New York State and Federal EPAs, NYLL § 194 *et seq.* and 29 U.S.C. § 206(d) *et seq.* respectively;

d.) entering a permanent injunction enjoining the Defendants from further violations of the New York State and Federal EPAs including an order, enjoining the County's mandated working of Supplemental Days, the County's mandate requiring the Plaintiffs and putative collective and class members to exchange a Supplemental Day for a Training Day, and any other term or condition of employment which this Court finds to be violative of the New York State and/or Federal EPA;

e.) exercising jurisdiction to first equalize the salaries of the female PCOs and PCOSs with the predominantly male FTCs and FCTSs, and then subsequently exercising jurisdiction to equalize the salaries of the male PCOs and PCOSs with their female co-workers;

f.) awarding the Plaintiffs and the putative collective and class members all monies and emoluments of employment owed to them as a result of the County's willful violations of the New York State and Federal EPAs, along with pre and post-judgment interest;

g.) awarding the Plaintiffs and the putative collective and class members liquidated damages under both the New York State and Federal EPAs resulting from the County's repeated, knowing, willful, and intentional violations of the provisions of the aforementioned laws pursuant to NYLL § 198 *et seq.* and 29 U.S.C. § 201, *et seq.* respectively;

h.) awarding a tax bump up on any award to offset the tax consequences of a lump-sum payment, calculated annually, in order to make each Plaintiff and putative collective and class member whole. See Gulino v. Dd. of Educ. of the City Sch. Dist. of the City of New York, 2016 WL 4129111, at *3 (S.D.N.Y. Aug 3, 2016);

i.) awarding the Plaintiffs and putative collective and class members reasonable attorney's fees, expenses, and costs of this proceeding; and

j.) awarding any other and further relief as the Court deems just and proper.

## JURY DEMAND

The Plaintiffs hereby demand a jury trial on all issues raised herein.

Dated: Mineola, New York
       February 14, 2018

Yours, etc.

_____

Law Offices of Louis D. Stober, Jr., LLC
Louis D. Stober, Jr., Esq. (LS-9318)
*Attorneys for Plaintiffs*
98 Front Street
Mineola, New York 11501
(516) 742-6546
(516) 742-8603 (fax)

**VERIFICATION**

STATE OF NEW YORK    )
                            :ss.:
COUNTY OF NASSAU    )


Danielle Davidson, being duly sworn, deposes and says:

I am one of the Plaintiffs in the within action; I have read the annexed Verified Complaint, know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.


DANIELLE DAVIDSON

Sworn to before me this
14 day of February, 2018

Notary Public

LOUIS D. STOBER
Notary [...] of New York
[...]
County
Comm[...] Oct. 31, 20 18

**VERIFICATION**

STATE OF NEW YORK    )
                             :ss.:
COUNTY OF NASSAU    )

Gary Volpe, being duly sworn, deposes and says:

I am one of the Plaintiffs in the within action; I have read the annexed Verified

Complaint, know the contents thereof, and the same are true to my knowledge, except

those matters therein which are stated to be alleged on information and belief, and as to

those matters, I believe them to be true.

GARY VOLPE

Sworn to before me this
1 4 day of February, 2018

Notary Public

LOUIS D. STOBER
Notary Public, State of New York
No. 02ST4822083
Qualified in Nassau County
Commission Expires Oct. 31, 20 18

**VERIFICATION**

STATE OF NEW YORK    )
                     :ss.:
COUNTY OF NASSAU     )


Susan Chodkowski, being duly sworn, deposes and says:

I am one of the Plaintiffs in the within action; I have read the annexed Verified

Complaint, know the contents thereof, and the same are true to my knowledge, except

those matters therein which are stated to be alleged on information and belief, and as to

those matters, I believe them to be true.


SUSAN CHODKOWSKI

Sworn to before me this
14 day of February, 2018

Notary Public

LOUIS D. STOBER
Notary Public, State of New York
No. 02ST...
Qualified in Nassau County
Commission Expires Oct. 31, 20 18

## VERIFICATION

STATE OF NEW YORK      )
                                       :ss.:
COUNTY OF NASSAU      )


Rosanna Lauro, being duly sworn, deposes and says:

I am one of the Plaintiffs in the within action; I have read the annexed Verified

Complaint, know the contents thereof, and the same are true to my knowledge, except

those matters therein which are stated to be alleged on information and belief, and as to

those matters, I believe them to be true.


_____
ROSANNA LAURO


Sworn to before me this
1 4 day of February, 2018


_____
Notary Public


LOUIS D. STOBER
Notary Public, State of New York
No. 02ST4822083
Qualified in Nassau County
Commission Expires Oct. 31, 20 18

## VERIFICATION

STATE OF NEW YORK          )
                                            :ss.:
COUNTY OF NASSAU          )


Wendy Neal, being duly sworn, deposes and says:

I am one of the Plaintiffs in the within action; I have read the annexed Verified

Complaint, know the contents thereof, and the same are true to my knowledge, except

those matters therein which are stated to be alleged on information and belief, and as to

those matters, I believe them to be true.


                                                                    _Wendy M. Neal_
                                                                    WENDY NEAL


Sworn to before me this
14 day of February, 2018


_____
Notary Public

LOUIS D. STOBER
Notary Public, State of New York
No. 02ST4822923
Qualified in Nassau County
Commission Expires Oct. 31, 20__

## VERIFICATION

STATE OF NEW YORK      )
                       :ss.:
COUNTY OF NASSAU       )


Matthew Sarter, being duly sworn, deposes and says:

I am one of the Plaintiffs in the within action; I have read the annexed Verified

Complaint, know the contents thereof, and the same are true to my knowledge, except

those matters therein which are stated to be alleged on information and belief, and as to

those matters, I believe them to be true.


MATTHEW SARTER


Sworn to before me this
14 day of February, 2018


Notary Public

LOUIS D. STOBER
Notary Public, State of New York
No. 02ST4632033
Qualified in Nassau County
Commission Expires Oct. 31, 20 18

## VERIFICATION

STATE OF NEW YORK     )
                      :ss.:
COUNTY OF NASSAU      )


Deborah Pedenzin, being duly sworn, deposes and says:

I am one of the Plaintiffs in the within action; I have read the annexed Verified Complaint, know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.


DEBORAH PEDENZIN

Sworn to before me this
14 day of February, 2018


Notary Public

LOUIS D. STOFER
Notary Public, State of New York
No. 02ST4622393
Qualified in Nassau County
Commission Expires Oct. 31, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DANIELLE DAVIDSON, SUSAN CHODKOWSKI,
GARY VOLPE, MATTHEW SARTER,
WENDY NEAL, DEBORAH PEDENZIN,
ROSANNA LAURO, and all others similarly situated,

**VERIFIED COMPLAINT**

Plaintiffs,

-against-

Index No.:

COUNTY OF NASSAU

Defendant.
-------------------------------------------------------------------X

---

**VERIFIED COMPLAINT**

---

**Law Offices of**
**LOUIS D. STOBER, JR., LLC**
*Attorneys for Plaintiffs*
**98 Front Street**
**Mineola, NY 11501**
**(516) 742-6546**