

*LAW OFFICES OF*
# LOUIS D. STOBER, JR., L.L.C.

98 FRONT STREET
MINEOLA, NEW YORK 11501

LOUIS D. STOBER, JR

ALYSSA F. BOMZE†

†ADMITTED IN NY & NJ

WEBSITE: WWW.STOBERLAW.COM
TEL: (516) 742-6546
FAX: (516) 742-8603*
* NOT FOR SERVICE OF PROCESS

May 26, 2023

**ORIGINAL VIA ECF**
Honorable James M. Wicks, USMJ
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re:    **Abbananto et al v. County of Nassau 19-CV-1102(JMW) and Davidson et al v. County of Nassau 18-cv-1182 (JMW) Chodkowski et al v. County of Nassau, 603925/2017 : Motion for Approval of EPA and Title VII/NYSHRL Settlement and in Support of Stipulation for Dismissal**

Dear Magistrate Judge Wicks:

    The Plaintiffs in the above-captioned matters write this letter in support of the Plaintiffs' Motion for Approval of the parties' Settlement Agreement and in support of the parties' Stipulation to Dismiss the Case with Prejudice under *Cheeks v. Freeport Pancake House*, 786 F.3d 199 (2d Cir. 2015). As will be discussed further below, the settlement of the above matter for a recovery of $2,300,000 to the named Plaintiffs as well as the 235 class members, including $766,666.66 in attorneys' fees, my costs and my expenses, $15,333.33 to Q6 Advisors as the Settlement Fund Administrators and $120,000 in participation awards to the individually named Plaintiffs constitutes a reasonable compromise in light of the several contested issues that were raised in the litigations and the maximum recovery that we believe could have been obtained had the case been successfully litigated through trial.

    Due to the fact I am leaving on vacation, Ms. Panico will be submitting her signature pages under separate cover.

    I.    <u>Background</u>

1



LAW OFFICES OF
**LOUIS D. STOBER, JR. L.L.C.**

The Plaintiffs filed this Equal Pay Act (EPA)Action in the United States District Court for the Eastern District of New York on February 23, 2018. An Amended Complaint was filed on March 3, 2020. The Plaintiffs filed their Title VII/NYSHRL action in the United States District Court for the Eastern District of New York on February 25, 2019. A motion to Amend the Complaint was filed In April of 2022. Collective Action was granted on *Davidson* and Class Action was granted on *Abbananto*. After years of extensive discovery and motion practice, the parties, on the eve of the close of discovery, agreed to mediation before Magistrate Judge Wicks. Three intensive days of mediation were held on December 16, 2022, March 8, 2023 and March 20, 2023 at which point a settlement was reached, pending Court approval and Nassau County Legislative approval (copy annexed hereto as Ex. A).

Both federal actions, brought by Police Communication Operators and Supervisors (PCO/PCOS), alleged the same facts, to wit, that PCO/PCOSs were not paid mileage reimbursement for non-contiguous overtime, did not receive payment for Holiday for the hours contiguous to but not on the Holiday and did not receive the same shift differential as Fire Communication Technicians I and II (FCT I/II). There was also a Nassau Supreme Court class action, *Chodkowski et al v. County of Nassau*, 603925/2017 alleging a breach of contract claim and a Nassau County Law Section 1307 claim for an alleged violation of the *Ebbert* settlement (copy annexed hereto as Ex. B). The *Ebbert* claim was dismissed by Judge Gonzalez in the *Allen et al v. County of Nassau* 22-cv-1572 federal lawsuit so that dismissal would have preclusive effect on the *Chodkowski* state court case (copy of decision annexed hereto as Ex. C) . Since there would be no recovery available under *Chodkowski* due to the effect of Judge Gonzalez's decision, the parties have agreed to file stipulation of discontinuance in that case upon approval of this settlement. Given that the *Chodkowski* claims would be dismissed under Judge Gonzalez's analysis, there will be no monies paid on that case and our annexed spreadsheet of settlement funds to be paid out (Ex. D) shows that only *Davidson* and *Abbananto* Plaintiffs, collectives and class members will be receiving settlement funds.

I have annexed hereto my declaration in support of attorneys' fees. I have been engaged in the practice of law specializing in labor and employment and FLSA litigation for over 39 years. I represent two of the largest labor unions in New York, the Civil Service Employees Association and the School Administrators Association of New York. I have been a frequent lecturer of labor law and am an adjunct professor at Cornell's Industrial Labor Relations, a position I have held for over 31 years. My accomplishments in the labor and employment field are well known, especially in the Eastern District of New York. I have million dollar plus settlements, verdicts and/or judgments from virtually every Judge in the Eastern District, including the successful settlement of the *Chodkowski* FLSA case for $3 million dollars which your Honor approved. I also successfully settled the *Gurrieri et al v. County of Nassau*, 16-cv-6983 for $4.9 million dollars. As such, my usual and customary legal fee is $650 per hour.

In these three cases, my fees, costs and disbursements were over $1,856,818.27 before mediations in March of 2023. I did not keep track of my hours as this Court, in mediation, stated that a legal fee of $766,666.66 was appropriate and would be approved. (and more hours will be expended in distribution and follow up of the settlement monies in the coming months). As a



LAW OFFICES OF
LOUIS D. STOBER, JR. L.L.C.

compromise, and with the full agreement of this Court and the County, I have accepted a legal fee and reimbursement of expenses of $766,666.66 to be paid by the County as part of the $2,300,000 settlement as full compensation for my fees and expenses. Additionally, Q6 Advisors, the Settlement Fund Administrators, will receive a fee of $15,333.33 in compensation for preparing and delivering the settlement checks to each of the Plaintiffs and class members. Finally, there is a total of $120,000 in participation fees as follows: Matt Sarter, who was my right hand man and invaluable in obtaining documents needed, keeping track of all the class members, keeping everyone updated and participating in all aspects of discovery and settlement: $25,000. The remaining Plaintiffs receiving participation fees were also involved, to a lesser extent, in discovery, and organizing/detailing how to equitably divide up the settlement funds among the collectives and class members: Susan Chodkowski: $13,571.43; Danielle Davidson: $13,571.43; Rene Abbananto $13,571.43; James Delahunty: $13,571.43; Wendy Neal: $13,571.43; Deborah Pedenzin: $13,571.43; and Rosanna Lauro: $13,571.43.

The Proposed Settlement

As alluded to above, the proposed settlement agreement awards $2,300,000 minus attorneys' fees, the Settlement Fund Advisor fee and participation fees, to wit, **$1,398,000.01** to the Plaintiffs and class members. It has been agreed by the parties that the monies to be paid are for lost mileage reimbursement. The Plaintiffs seek this Court's approval of this settlement. The County has agreed that the entirety of the settlement is for mileage reimbursent.

That sum shall be distributed to the class in the amounts spelled out in the annexed spreadsheet (Ex. D) based on a detailed analysis of how long each Plaintiff/collective/class member was employed by the County for the relevant time period of *Abbananto* and *Davidson*, to wit, since 2015 (3 years prior to filing *Davidson*) and 2016 (three years prior to filing *Abbananto*). This was also the methodology used in the Court approved settlement in the Chodkowski federal FLSA case (copy of Magistrate Judge Wicks decision and the settlement annexed as Ex. E). Anyone who left County service prior to those dates was not included in the settlements as their claims would be untimely.

To be as fair and equitable as possible for the remaining Collective/Class members, the amounts to be distributed was based on their respective seniorities. The analysis was that the longer the employee was employed, the more mileage they lost for non-contiguous overtime. The most senior group, those with 23 or more years of service (seniority date of 1999 or earlier) and are still employed by the Police Department as PCO/PCOSs shall receive $11,000 each. There are 51 such employees and that is $561,000 of the settlement. The second group are the active employees with 19-22 years of service (seniority date of 2000-2003). Each of them shall receive $10,000. There are 14 such employees and that is $140,000 of the settlement.

The third group are the active employees with 14-18 years of service (seniority date of 2004-2008). Each of them shall receive $9,000. There are 26 such employees and that is $234,000 of the settlement. The fourth group are the active employees with 9-13 years of service (seniority date of 2009-2013). Each of them shall receive $6,000. There are 16 such employees



**LAW OFFICES OF**
**LOUIS D. STOBER, JR. L.L.C.**

and that is $96,000 of the settlement. The fifth group are the active employees with 5-8 years of service (seniority date of 2014-2017). Each of them shall receive $4,650. There are 43 such employees and that is $199,950 of the settlement. The sixth group are the active employees with 4 years or less of service (2018-Feb. 2021). Each of them shall receive $800. There are 35 such employees and that is $28,000 of the settlement. The seventh group, two active employees who are now Bureau Director (BD) and Assistant Bureau Director (ABD) titles (previously were PCOs and PCOSs during the relevant time period, shall receive $8,000 each. That is $16,000 of the settlement.

The eighth group are those employees who retired between 2022 to present. They will receive $8,000 each. There are 7 such employees. That is $50,000 of the settlement. The ninth group are those employees who retired in 2021. They will receive $4,000 each. There are 4 of them. That is $13,000 of the settlement. The tenth group are the long term retirees who were retired between 2015-2020. They will receive $1,775 each. There are 28 such employees. That is $49,700 of the settlement. The eleventh group are those employees who resigned or died between 2015-present. There are five subcategories. Group A has 3 employees at $1,500 each, Group B has 2 employees at $750 each, Group E has 2 employees at $500 each, Group F has one employee at $250 and finally, named Plaintiff Gary Volpe's estate will receive $3,000. There are a total of 9 people in this category. That is $10,250 of the settlement.

In analyzing the remaining collective/class names, the named plaintiffs ascertained that there is a twelfth group consisting of active employees or those off probation who were not damaged in that they had no instances of lost mileage. There are 7 such employees and they will receive no portion of the settlement. The thirteenth group (the final group) were those employees who the named plaintiffs were able to ascertain never worked non-contiguous overtime (they were on probation) or were terminated before working any overtime or were hired by the County but never actually worked at all and thus were not damaged. There were 48 such employees.

The result is that our detailed analysis disclosed that there were 235 people entitled to share in the settlement fund to be distributed by Q6 Advisors. Any Opt-In who is not a member of the Abbananto class and is only a member of the Davidson collective, shall not receive their settlement monies unless they timely submit, to the undersigned, a Consent and Release in the form attached to the settlement agreement (Ex. A) that is before your Honor. If they do not submit a timely Consent and Release, I will return their portion of the settlement to Nassau County. According to our chart and analysis, those Davidson only members fall into the final group and would receive no monies under this settlement since they were not damaged anyway.

As stated above, the settlement monies are allocated as compensation for lost mileage reimbursement. Since the concurrent case of *Allen et al v. County of Nassau*, 22-cv-1572 has been settled with the FCT I/IIs agreeing to only receive Holiday pay for hours worked on a Holiday, that claim in this case is withdrawn and the PCO/PCOSs will only be compensated, as they have in the past (and all other County employees) for the hours actually worked on Holidays at the premium rate. In addition, as in *Allen*, the PCO/PCOSs agree to not receive mileage reimbursement, going forward, for non-contiguous overtime if this settlement is approved. In


LAW OFFICES OF
LOUIS D. STOBER, JR. L.L.C.

addition, through discovery, it was determined that the PCO/PCOSs do not receive less shift differential that FCT I/IIs. That left past mileage reimbursement as the only element of damages left in this litigation. The parties have annexed the proposed Memorandum of Agreement (MOA), to be signed by the CSEA and the County, upon Court approval and Legislative approval. Said MOA clearly delineates that going forward, the PCO/PCOSs shall receive Holiday pay for hours worked on the respective Holidays and will not receive mileage reimbursement for non-contiguous overtime, including recall.

This Court should also take note that many more hours will still be expended distributing the settlement proceeds to all of the Plaintiffs and class members which will be absorbed into the above fees. For the reasons set forth below, Counsel respectfully submits that the attorneys' fees and expense reimbursement we seek are fair and reasonable under the applicable legal standards and should be awarded in light of the contingency risk undertaken and the extraordinary result achieved in this case. The FLSA contains the applicable fee-shifting provision for violations of the Act which provides as follows: "the court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Plaintiffs are the prevailing party for the purposes of the statute "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Where plaintiffs obtain a favorable settlement in an action brought pursuant to the FLSA, they constitute as prevailing parties and are entitled to attorney's fees. "The fact that [plaintiffs] prevailed through a settlement rather than through litigation does not weaken [plaintiffs'] claim to fees." *Kahlil v. Original Old Homestead Rest., Inc.,* 657 F.Supp.2d 470, 474 (S.D.N.Y.2009) (quoting *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)).

In the instant case, the County (upon this Court's recommendation) has agreed to compensate me $766,666.66 for my legal fees and costs and expenses as part of the $2,300,000 settlement. This is a fair and reasonable fee and is less than what my actual legal fees were in this matter to date.

Should this Court require anything further of the undersigned with regard to his fee request, I will be happy to oblige.

<u>The Proposed Settlement Warrants Approval from this Court</u>

*A. Legal Standard for Approval*

As a general matter, because judicial approval of an FLSA settlement does not implicate the same due process concerns as a Rule 23 case in which many of the parties to be bound by a settlement are not present or even active in the case, the standard of review of an FLSA settlement is far less stringent. <u>Massiah v. MetroPlus Health Plan, Inc.</u>, No. 11-CV-05669 BMC, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012). Therefore, Courts are encouraged to approve FLSA settlements so long as the settlement was reached out of contested litigation regarding a *bona fide* dispute and so long as the compromise reached is reasonable in light of the


LAW OFFICES OF
**LOUIS D. STOBER, JR. L.L.C.**

contested issues. Sierra v. Spring Scaffolding LLC, No. 12-CV-05160 (JMA), 2015 WL 10912856, at *6 (E.D.N.Y. Sept. 30, 2015). In the present action, both of these factors have been satisfied and warrant approval of the proposed settlement.

    B. *Discussion of Factors Favoring Approval*

As the facts above and the course of litigation should demonstrate, the present action involved more than just a contention of innocence on the part of the Defendant but an actual *bona fide* dispute between the parties. The compromise that has been reached in the present action is reasonable in light of the fact it provides each Plaintiff and class member with compensation for mileage reimbursement that has not been paid from 3 years prior to the filing of the *Davidson* and *Abbananto* cases through the date of settlement for the County's actions as alleged in the Complaint. These sums were approved by Your Honor in reaching a settlement on March 23, 2023 and is fair in light of the fact that if the County were to succeed in its claim that FCT I/IIs were not comparable to PCO/PCOSs then there would be -0- damages. If the Plaintiffs succeeded at trial, the amounts owed in mileage reimbursement would be in excess of $2,000,000 over the life of this litigation and three years prior. This Court has already weighed the risks and advantages of the settlement figures herein by encouraging the Plaintiffs, at mediation, to accept the $2,300,000 number as fair and reasonable.

In preparing for mediation, we calculated that the overall total for all damages, could exceed $12 million dollars if successful on the shift differential, holiday pay, mileage reimbursement and pain and suffering claims. As mentioned above, the shift differential and holiday pay claims ended up not being a reality given that the FCT I/IIs have given up any future claims to Holiday pay and given that all other County employees, pursuant to their Collective Bargaining Agreement, were paid Holiday pay the same as the PCO/PCOSs.

Given that the County hotly contested whether the predominantly male, FCTs were comparable to the predominantly female PCOs, this was a very fair settlement of those claims.

Finally, recognizing the outstanding support and work that Matt Sarter in particular, and each of the Plaintiffs in general provided to the undersigned during the course of litigation, including analysis of thousands of pages of discovery materials, obtaining discovery and engaging in two days of mediation, $120,000 participation fees which was agreed upon by the Plaintiffs, is appropriate.

Therefore, in light of the foregoing, the Plaintiffs respectfully request that the annexed settlement and the parties' stipulation to dismiss the case with prejudice (both annexed hereto as Exhibit "A") be approved. The breakdown of how much each Plaintiff will receive is annexed hereto as Exhibit "D".

Since every collective member in *Davidson* signed an opt in form agreeing to be bound by any settlement reached by the Plaintiffs and given that none of the *Abbananto* class members opt out of the litigation, there is no reason to hold a "fairness hearing" as it would be duplicative of what the parties have already built into the stipulation of settlement. We believe holding a

LAW OFFICES OF
LOUIS D. STOBER, JR. L.L.C.

"fairness hearing" will not add anything to the equation and, in reality will delay the processing and payout of this settlement by at least two months.

C. *Wolinsky v. Scholastic Inc.* 900 F. Supp.2d 332, 335 (S.D.N.Y.) Factors

Factor I: the plaintiffs' range of possible recovery: the range of recovery for each plaintiff and class member will receive between -0- dollars to $11,000 or so on the mileage and pain and suffering claims. If totally successful in litigation, the class members would receive about the same in mileage reimbursement ($2,000,000 mileage reimbursement divided by 235 class members). This is an outstanding recovery.

Factor II: the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses: Reaching a settlement before having to expend a tremendous amount of time and resources on motion practice and trial, including weeks of trial on damages to each class member is an economic boon for both sides. These cases have been litigated for over five years now with motion practice to ensue if settlement is not reached.

Factor III: the seriousness of the litigation risks faced by the parties: As shown above, the County had a very real risk of having to pay these plaintiffs the mileage reimbursement, Holiday pay and pain and suffering if Plaintiffs were successful and the FCTs did not waive their Holiday pay entitlements. The County's main defense was that the FCTs and PCOs were not comparable and therefore, not covered by the EPA or Title VII/NYSHRL. If they were successful on that claim, there would be -0- damages for the Plaintiffs and class members. By settling now, the County (and the Plaintiffs) have saved thousands of dollars in legal fees and expenses that protracted litigation would have produced. Realizing the risks on both sides, the Parties reached the settlement brokered by your Honor. As an additional bonus for settling, the County was able to obtain a concession from the plaintiffs that they will, going forward, only receive Holiday pay for the actual hours worked on a holiday and that going forward, they will not receive milage reimbursement for working non-contiguous overtime, issues that would not have been resolved if the litigation had gone forward to judgment.

Factor IV: whether the settlement agreement is the product of arm's – length bargaining between experienced counsel: This Court is aware that these issues have been seriously litigated and that counsel on both sides are seasoned veterans of these FLSA/EPA wars. The settlement reached here was the result of arm's length bargaining in two mediation sessions supervised by Your Honor as he believed this to be a fair and just settlement.

Factor V: the possibility of fraud or collusion: Since the settlement reached was supervised by Your Honor, there was no opportunity for or hint of fraud or collusion.

Looking at the *Wolinsky* factors against settlement, this Court can see none of them exist.



LAW OFFICES OF
LOUIS D. STOBER, JR. L.L.C.

Factor I: the presence of other employees situated similarly to the claimant: with this settlement, there are no other PCO/PCOSs affected by issues in this litigation. All have been accounted for.

Factor II: a likelihood that the claimant's circumstances will recur: As stated in the motion, this circumstance will not recur. As part of the settlement, there is a new Memorandum of Agreement (also specifically approved by your Honor) that requires the payment of Holiday Pay for only the hours worked on a holiday and eliminating the payment of mileage reimbursement for non-contiguous overtime. Therefore, the issues in this litigation can never recur.

Factor III: a history of FLSA non-compliance by the same employer or others in the same industry: with this settlement, we will have concluded these FLSA/EPA/Title VII issues for all PCO/PCOSs in the Police Department. The settlement agreement specifically carves out the existing litigation between the parties that is still ongoing.

Factor IV: the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general ir in an industry or in a workplace. The record of the County's actions concerning mileage reimbursement, Holiday Pay, shift differential and pain and suffering were completely developed. This action rectifies all FLSA issues, EPA issues and Title VII issues concerning the PCO/PCOSs vias vie FCTs except as otherwise carved out in the settlement.

In addition to disputes over liability, there was also the question of the measure of damages. The Plaintiffs claimed that the violations of the EPA were willful entitling them to go back to their date of hire, three years or less, and entitlement to liquidated damages equal to 100% of the monies owed.

Furthermore, the compromise that has been reached in the present action is reasonable in light of the issues in the case. If the Defendants prevailed the Plaintiffs would be entitled to -0- damages. By contrast, if the Plaintiffs prevailed at trial, the monetary damages were only a few million dollars more than the settlement. Given the chance of a -0- recovery and the security of having a set payment now versus waiting for years for a final outcome of this case, it behooved all parties to reach the settlement that it did.

The Proposed Settlement Warrants Approval from this Court

As stated above, because judicial approval of an FLSA settlement does not implicate the same due process concerns as a Rule 23 case in which many of the parties to be bound by a settlement are not present or even active in the case, the standard of review of an FLSA settlement is far less stringent. Massiah v. MetroPlus Health Plan, Inc., No. 11-CV-05669 BMC, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012). Therefore, Courts are encouraged to approve FLSA settlements so long as the settlement was reached out of contested litigation regarding a *bona fide* dispute and so long as the compromise reached is reasonable in light of the

**LAW OFFICES OF**
**LOUIS D. STOBER, JR. L.L.C.**

contested issues. Sierra v. Spring Scaffolding LLC, No. 12-CV-05160 (JMA), 2015 WL 10912856, at *6 (E.D.N.Y. Sept. 30, 2015). In the present action, both of these factors have been satisfied and warrant approval of the proposed settlement.

  We would like to thank this Court for its time and consideration with respect to this matter.

            Very truly yours,
            *Louis D. Stober, Jr.*
            LOUIS D. STOBER, JR. (LS-9318)